IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
CENTRAL DIVISION

BRENDA STALLINGS                                                                                           PLAINTIFF

VS.                          CASE NO. 4:21-CV-00625 KGB

ARKANSAS PUBLIC DEFENDER COMMISSION                DEFENDANT

PLAINTIFF'S REPLY BRIEF IN SUPPORT OF HER
MOTION FOR EQUITABLE RELIEF

Introduction

The plaintiff has filed her motion for equitable relief, which she adopts and incorporates herein. A jury has found that the plaintiff has been the victim of discrimination based on her race in her terms and condition of employment with the defendant Arkansas Public Defender Commission. The question is now what can make the plaintiff whole as the law requires. The defendant filed its response to the plaintiff's motion for equitable relief.

Statement of Relevant Facts

The plaintiff brought her lawsuit contending that she was the victim of discrimination based on her race in that similarly situated white employees were being paid more than she was being paid. The evidence adduced at trial demonstrated that the Arkansas Public Defender Commission, by acts of its Executive Director Gregg Parrish implemented a pay system that allowed white public defenders who had less experience and had been licensed less than the plaintiff to be paid more than the plaintiff. The evidence demonstrated that Gregg Parrish allowed white public defenders to move up in the classification system with very little effort on their part. Casey Beard,

who is Caucasian, and was formerly employed by the Arkansas Public Defender Commission testified that she received telephone calls from Bill Simpson, who advised that Parrish has provided her with a significant pay raise in 2015, and later permitted her to move from a GS 10 pay grade to a GS 11 pay grade in 2017, that also came with a significant raise. Jason Kordsmeir, also a Caucasian public defender, also testified that he was allowed to advance on the pay grade system, moving from a GS 10 to ultimately to a GS 14, again with very little effort on his part. Other white public defenders were allowed to move up on the pay grade system, such as David Sudduth. Again, all of the above-mentioned public defenders had less seniority than the plaintiff, and had been licensed less than the plaintiff to practice law. Despite the fact that the plaintiff's job performance exceeded standards, she was still being paid less than her white counterparts, which is the reason why she initiated this litigation.

The defendant argues in its response brief for equitable relief that it does not have the legal authority to "reclassify" the plaintiff. This argument was advanced during the trial, which the jury did not buy. The jury heard testimony of how white public defenders were able to move up on the pay scale with little to no effort, while it took extraordinary efforts and nearly an act of congress on the plaintiff's part to move from the GS 10 to the GS 11 pay grade, and receive raises.

The State of Arkansas has implemented a new pay grade system that goes into effect on July 1, 2025. The pay grade changes the GS designation to "SPC" classification. **See SB392**.[1] The defendant concedes as the plaintiff argued in her brief for equitable relief, that she will fall on the SPC05 pay grade classification for Public Defender II. The plaintiff once again will continuously be paid less than her white counterparts. Once again, white public defenders will be classified at the SPC08, SPC09, and SPC10 pay grade making significantly more money than the

---

[1] The plaintiff recognizes that after SB392 was signed into law by the Governor, it became Act 499.

plaintiff. Mr. Sudduth will be classified at the SPC10 pay grade, potentially making $171,631.00, which will be $64,294.47 more than the plaintiff's current pay of $107,336.53. Jason Kordsmeier will be placed at the SPC09 pay grade making in excess of $156,028.00, which will be $48,691.47 more than what the plaintiff will be making. In essence, even though the plaintiff was found to have been a victim of discrimination based on her race in compensation, with the new compensation act, the plaintiff will continue to be paid less than her white counterparts, making this lawsuit an exercise in futility, and leaving a smile on the face of Mr. Parrish. The question for this court is what can be done to make the plaintiff Brenda Stalling whole. Is the Court powerless to make a victim of race discrimination whole? I think not.

## Statement of Law

The state argues that this court does not have jurisdiction to provide for equitable and injunctive relief because the plaintiff did not request this in her complaint, which is not true. The plaintiff's complaint requested injunctive relief and equitable relief. However, even if the plaintiff's complaint did not specifically ask for such relief, the Court still has the power to provide for such relief. "A court may exercise its discretion to fashion injunctive relief to remedy the effects of racial discrimination. Briscoe v. Fred's Dollar Store, 24 F.3d 1026, 1028 (8th Cir. 1994). That discretion is not unlimited, however, and is reviewed for abuse. *Id.* Provisions of an injunction may be set aside if they are broader than necessary to remedy the underlying wrong. Easley v. Anheuser-Busch, Inc., 758 F.2d 251, 263 (8th Cir. 1985)." EEOC v. HBE Corp., 135 F.3d 543, 557 (8th Cir. 1998).

Again, the jury found that the plaintiff was the victim of discrimination when it came to her compensation. "District courts have broad discretion to issue an injunction once discrimination has been established in a Title VII action." Briscoe v. Fred's Dollar Store, Inc., 24 F.3d 1026,

1028-1029 (8th Cir. 1994). The plaintiff in *Briscoe*, put on evidence that "[F]red's implementation of its policies and regulations revealed a 'consistent practice' of discrimination against its Black employees." Briscoe, 24 F.3d at 1029. "The injunction against continued discrimination is designed to prevent similar misconduct." EEOC v. HBE Corp., 135 F.3d 543, 558 (8th Cir. 1998). In the case at bar, the defendant will continue its conduct of discriminating against the plaintiff based on her pay, if the Court does not intervene by providing injunctive relief and equitable relief as requested by the plaintiff.

> If a district court finds that an employer engaged, or continues to engage, in intentional discrimination, 'the court *may* enjoin the employer from engaging in such discrimination and may order any affirmative action or other equitable relief the court deems appropriate. 42 U.S.C. § 2000-5(g)(1) (emphasis added). '[O]ne of the central purposes of Title VII is to make persons whole for injuries suffered on account of unlawful employment discrimination,' and district courts have wide discretion to fashion appropriate relief. Franks v. Bowman Transp. Co., 424 U.S. 747, 763, 96 S.Ct. 1251, 47 L.E.d.2d 444 (1976).

EEOC v. Siouxland Oral Maxillofacial Surgery, 578 F.3d 921, 928 (8th Cir. 2009).

The defendant next argues that it cannot do what the plaintiff is asking because Arkansas law does not permit this. The defendant argues that it does not have the authority to "with respect to the classification of her position under Act 499, . . . There is nothing in the Act vesting the Public Defender Commission with any authority to take any action whatsoever in the Act's implementation." (**Defendant's Response Brief, R. Doc. at 88, p. 8**). However, the jury heard testimony of how Mr. Parrish simply made decisions to place Casey Beard, Jason Kordsmeier, David Sudduth, and other white public defenders at the higher pay grades. To demonstrate how racially discriminatory Mr. Parrish was in his employment decision, he testified that although he had gotten permission to have Ms. Stallings' position reclassified to the GS13 paygrade, he opted instead to place her at the GS11 paygrade. (**See Plaintiff's Exhibit 12-Q attached herein as Exhibit "A"**). Nevertheless, even if the defendant's argument is true, which it is not, this Court

is not powerless. "The federal rules govern all civil actions tried in federal court, however, and they control over conflicting state law." EEOC v. HBE Corp, 135 F.3d 543, 551 (8th Cir. 1998).

Even if the plaintiff did not request for injunctive relief and equitable relief, the Court still has the power to award such relief when there has been a finding of discrimination. As the Code provides:

(a) Employer Practices

It shall be an unlawful employment practice for an employer—

(1) to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual *with respect to his compensation*, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin; or
(2) to limit, segregate, or classify his employees or applicants for employment in any way which would deprive or tend to deprive any individual of employment opportunities or otherwise adversely affect his status as an employee, because of such individual's race, color, religion, sex, or national status.

42 U.S.C. § 2000e-2(a) (emphasis added).

In a case decided by the Eighth Circuit Court of Appeals, the Court analyzed the meaning of the above-mentioned statute. The Eighth Circuit stated:

As always, the words of the Congress are the best indications of its intention. It is not failing to hire someone, or discharging him or her, because of race or sex, that is unlawful. The statute also forbids employers 'otherwise to discriminate . . . with respect to compensation, terms, conditions, or privileges of employment because of . . . race.' § 703(a) (1), and makes it unlawful for employers 'to limit . . . or classify . . . employees . . . in any way which would deprive *or tend to deprive* any individual of employment *opportunities or otherwise adversely affect*' him or her because of race. Section 703(a)(2). To put it in terms of the present case. It would be unlawful for defendant to put Bibbs at a disadvantage in the competition for promotion because of his race, as well as actually to deny him the promotion for this reason. (Indeed, if an employee requires black employees to meet a higher standard, the statute is violated even if they actually meet it and get the jobs in question.) Every kind of disadvantage resulting from racial prejudice in the employment setting is outlawed. Forcing Bibbs to be considered for promotion in a process in which race plays a discernible part is itself a violation of law, regardless

of the outcome of the process. At the very least, such a process 'tend(s) to deprive' him of an 'employment opportunity].' Section 703(a)(2).

Bibbs v. Block, 778 F.2d 1318 (8th Cir. 1985).

The defendant contends that it does not have the authority to place Ms. Stallings on a higher pay grade. The defendant contends that the Arkansas Public Defender is bound by the statute in determining where to place public defenders on their pay grade. The defendant argues that "[t]he court lacks jurisdiction to issue such an injunction, and Plaintiff's Motion should be denied accordingly." (**Defendant's Response Brief, R. Doc. at 88, p. 7**). The defendant made similar arguments in another case in an attempt to prevent the payment of attorney's fees to a prevailing party.

"Given the purposes of § 1988, it would be anomalous to permit the state in effect to reduce the attorney's fees award by withholding payment for a considerable length of time." Preston, et al. v. Thompson, 565 F.Supp. 294, 298 (N.D. Ill. 1983), *citing*, Spain v. Mountanos, 690 F.2d 742, 748 (9th Cir. 1982).

When the State of California refused to pay attorney's fees that the court awarded, the Ninth Circuit held that the district court had the power to order state officials to withdraw the funds from the state coffers.

> However, under the extraordinary circumstances here where the judgment is against a state, which refuses to appropriate funds through the normal process provided by state law, the district court should not necessarily be reduced to satisfying a judgement through the cumbersome procedure of attempting to execute against state property or bank accounts. It may, instead, pursue any remedy provided in Rule 69 or Rule 70 to enforce the award, including ordering state officials to pay the claim.

Spain v. Mountanos, 690 F.2d 742, 745 (9th Cir. 1982).

"We agree with the Fifth Circuit that a state cannot frustrate the intent of section 1988 by setting up state law barriers to block enforcement of an attorney's fees award." 690 F.2d at 46.

In another case, the plaintiff instituted litigation against the State of Mississippi over the conditions at Mississippi's Parchman Penitentiary. The litigation started in 1971, and in 1974, the court found that the practices of the prison violated the constitution. The court also awarded attorney's fees pursuant to 42 U.S.C. § 1988. However, the State of Mississippi refused to pay the attorney's fees. The State of Mississippi contended that state law prohibited the satisfaction of any judgment, unless the legislature approved the appropriation. "The issue here is not one of judicial confrontation with the state. It is one of *implementation* of a Congressional mandate. . . Congress has declared that states and their officials who violate federal civil rights laws must reimburse the successful plaintiff for costs incurred in seeking redress." Gates v. Collier, 616 F.2d 1268, 1272 (5th Cir. 1980). The State of Mississippi took the position that the Court could order them to pay the attorney's fees, but they were not going to pay. "[W]here a state expresses its unwillingness to comply with a valid judgment of a federal court, the court may use any of the weapons generally at its disposal to ensure compliance. '[F]ederal courts are not reduced to issuing [judgments] against state officers and hoping for compliance." *Id.* at 690, 98 S.Ct. at 2574.

When the Sheriff of Dallas County violated his deputies' civil rights by firing them, they sued. After reaching a settlement, the Court then awarded the deputies their attorney's fees. Dallas County tried to get out of having to pay the attorney's fees awarded by the court arguing that it was never a party to the lawsuit, and that this was the sheriff's doing, and the county should not have to pay. The 5th Circuit saw it differently. "The district court's authority to award attorney's fees is established by § 1988 which is a Congressional enactment pursuant to Section 5 of the Fourteenth Amendment." Collins v. Thomas, et al., 649 F.2d 1203, 1206 (5th Cir. 1981). "The County may not successfully hide behind state procedural shields to avoid the consequences of a

7

valid district court judgment effectuating an appropriate § 1988 award." Collins v. Thomas, et al., 649 F.2d 1203, 1206 (5th Cir. 1981).

In that the plaintiff was found by a jury to have been a victim of discrimination based on her race, the Court has the power to fashion relief that will make the plaintiff whole. The Court has the power to issue injunctive and equitable relief in order to make the plaintiff whole. If the Arkansas Public Defender Commission is allowed to keep the plaintiff at a pay grade that will subject her to a continuous pattern of discrimination, then the verdict of the jury would be rendered a nullity. The plaintiff is asking the Court to exercise its discretion by issuing injunctive relief and equitable relief to require the defendant to place her at the midpoint of the SPC09 pay grade.

Respectfully submitted,

Austin Porter Jr., No. 86145
PORTER LAW FIRM
323 Center Street, Suite 1035
Little Rock, Arkansas 72201
Telephone: 501-244-8200
Facsimile: 501-372-5567
Email: Aporte5640@aol.com

CERTIFICATE OF SERVICE

I, Austin Porter Jr., do hereby certify that a copy of the foregoing pleading was electronically filed with the Clerk of the United States District Court for the Eastern District of Arkansas-Central Division, on this 11th day of June 2025, using the CM/ECF system, which is designed to send notification of such filing to the following:

Brian D. Black
Britt Johnson
Assistant Attorney General
323 Center Street, Suite 200
Little Rock, Arkansas 72201

Brian.Black@arkansasag.gov
Britt.Johnson@arkansasag.gov

Austin Porter Jr.